IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FOUNDERS INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-cv-00367-M |
| | § | |
| BILLY'S BAR & GRILL, LLC, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS OR TRANSFER**

Before the Court is Defendant Matthew Kunkle's Motion to Dismiss or Transfer. (ECF No. 21). For the reasons stated below, the Motion is **DENIED**.

**I.    Factual and Procedural Background**

Plaintiff Founders Insurance Company is an insurance company whose citizenship, place of incorporation, and principal place of business are all outside Texas. (ECF No. 1 ¶ 3). Defendant Billy's Bar & Grill, LLC ("BB&G") was a limited liability company formed under the laws of Texas, before it forfeited its charter on February 21, 2014. (*Id.* ¶ 4, Ex. B). Plaintiff was the former insurer of BB&G until the policy was allegedly cancelled on September 5, 2011. (*Id.* ¶¶ 1, 12). This insurance coverage dispute stems from a September 30, 2011, incident in which an intoxicated Kunkle was allegedly injured when he crashed his motorcycle after drinking at BB&G. (*Id.* ¶ 16).

Defendant Joe Polanco is an individual who resides, is a citizen of, and formerly conducted business in Texas. (*Id*. ¶ 5). Defendant Matthew Kunkle is an individual who resides in and is a citizen of Texas. (*Id*. ¶ 7). Laurie Kinser is an individual who was terminated as a

Defendant on May 29, 2018, when the Court granted Plaintiff and Kinser's Joint Motion to Dismiss with Prejudice.  (*See* ECF Nos. 13–14).

On February 14, 2018, Plaintiff filed its Complaint and Request for Declaratory Judgment under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.  (*See* ECF No. 1).  Plaintiff requests a declaratory judgment that the Liquor Liability Policy No. LLTX000892 (the "Founders Policy"), which lists BB&G as the named insured, was cancelled effective September 5, 2011.  (*Id.* ¶¶ 1, 12).  Kinser is listed as an additional insured party on the Founders Policy.  (*Id.*, Ex. A at 4, 6–7).  Plaintiff also seeks a declaratory judgment that it had and has no duty to defend or indemnify any Defendant for claims in a related Collin County suit by Kunkle, arising from injuries Kunkle allegedly incurred in the September 30, 2011, motorcycle crash.  (*Id.* ¶ 2).  On September 3, 2013, Kunkle filed suit in Collin County, Texas, against BB&G, Polanco, Kinser, and others not named as defendants in this case (the "Collin County suit").  (*Id.* ¶ 16, Ex. C at 6; *see also Matthew Kunkle v. Billy's Bar & Grill, LLC, et al.*, No. 219-03508-2013 (219th Dist. Ct., Collin County, Tex. Sept. 3, 2013).  That suit is still pending.  (*Id.*)

Plaintiff alleges the following facts.  On October 1, 2013, Plaintiff received a fax from one of Kunkle's attorneys, with a copy of Kunkle's petition in the Collin County suit.  (ECF No. 1 ¶ 19).  In an October 3, 2013, telephone conversation with that attorney, Plaintiff told him that the Founders Policy did not cover the motorcycle crash, and that Plaintiff had provided the relevant policy documents to Kunkle's prior counsel, including the notice of policy cancellation.  (*Id.* ¶ 20).

On February 21, 2014, BB&G forfeited its charter to the Texas Secretary of State.  (*Id.* ¶ 4, Ex. B).

On August 21, 2017, Kinser's attorney sent Plaintiff, in a fax and email, a second notice of Kinser's claim under the Founders Policy, seeking a defense and indemnity on Kunkle's claims against her in the Collin County suit. (*Id.* ¶ 26, Ex. C). Kinser alleged that she was an additional insured under the Founders Policy, and attached a copy of Kunkle's petition in the Collin County suit. (*Id.*) The documents Kinser submitted to Plaintiff therefore showed that the motorcycle crash was outside the coverage period. (*Id.*)

On September 7, 2017, Plaintiff notified Kinser that it declined her claim for a defense and indemnity, because the Founders Policy was not in effect on September 30, 2011, the date of the incident resulting in Kunkle's injuries. (*Id.* ¶ 27). Plaintiff requested that Kinser provide the information she relied upon in making the August 21, 2017, claim, but received no response. (*Id.*)

Kunkle is not an insured or named beneficiary in the Founders Policy. (*Id.* ¶ 28, Ex. A). Kunkle moves to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3), or, in the alternative, to transfer this case to the Eastern District of Texas under 28 U.S.C. § 1404(a) or 1406(a). (ECF No. 21).

**II.     Legal Standard**

    **A.  Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must take the allegations of the complaint as true, resolving ambiguities or doubts regarding sufficiency of the claim in favor of the plaintiff. *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard does not require "detailed factual allegations," but it does demand more than an

unadorned accusation devoid of factual support. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its face. *Twombly,* 550 U.S. at 570. A court must accept all factual allegations as true, but it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Id.* at 555. When the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief. *Iqbal*, 556 U.S. at 678.

District courts may only consider the pleadings, and their attachments, when deciding a Rule 12(b)(6) motion. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A court may also consider and take judicial notice of matters of public record, including filings establishing litigation in another court. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *see also* Fed. R. Evid. 201(f); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *SB Int'l, Inc. v. Jindal*, No. 3:06-CV-1174-G, 2007 WL 1411042, at *1 (N.D. Tex. May 14, 2007). Thus, this Court may consider the Founders Policy and Defendant Kunkle's petition in the Collin County suit, both of which Plaintiff attached to its Complaint. (ECF No. 1, Ex. A, C at 6–15).

Under the *Erie* doctrine, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 834 (5th Cir. 2014). Because the issue of standing affects the parties' substantive rights, Texas law governs. *See id.*

### B. Venue

#### 1. § 1391 Standard

Venue is proper in a judicial district in which any defendant resides, if all defendants are residents of the state where that judicial district is located. 28 U.S.C. § 1391(b)(1). Venue is also proper in a district where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

#### 2. § 1404(a) Standard

Even if venue is proper, the Court may, "[f]or the convenience of the parties and witnesses" and in "the interest of justice," transfer the case to any district in which the case could have been brought under 28 U.S.C. § 1391. 28 U.S.C. § 1404(a). The Court has "broad discretion" in deciding whether to transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc). However, the Fifth Circuit requires the Court to consider a variety of private and public interest factors in making the transfer decision. *LSREF2 Baron, LLC v. Aguilar*, No. 3:12–CV–1242–M, 2013 WL 230381, at *5 (N.D. Tex. Jan. 18, 2013) (Lynn, J.). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

## III. Analysis

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Because the Collin County suit is pending, Kunkle argues that the claims in this case are not ripe for consideration in federal court, and that the case should thus be dismissed for failure to state a claim under Rule 12(b)(6). (ECF No. 21 ¶ 9). Kunkle also argues that the controversy between Kunkle and Plaintiff in this case is not ripe under Texas law, which prohibits an injured third party from suing an insurer before the tortfeasor's liability has been determined in a final judgment. (*Id.* ¶¶ 13–14). Kunkle claims this prohibition extends to the insurer's ability to sue the injured third party. (*Id.* ¶ 14).

Texas law states that "an injured third party simply cannot sue the tortfeasor's liability insurance company directly until the tortfeasor's liability has been finally determined by agreement or judgment." *Owens v. Allstate Ins. Co.*, 996 S.W.2d 207, 208 (Tex. App.—Dallas 1998) (pet. denied); *see also In re Essex Ins. Co.*, 450 S.W.3d 524, 526–28 (Tex. 2014) (holding that allowing injured third party to pursue claims simultaneously against the tortfeasor and the tortfeasor's insurer in the same suit would prejudice both the tortfeasor and the tortfeasor's insurer in their defenses against the injured third party's claims). However, this limitation does not apply to suits by insurers—an insurer can seek a declaratory judgment regarding its duty to indemnify before the tortfeasor's liability has been determined. *Id.* at 527; *see also Tex. Ass'n of Counties Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128, 135 (Tex. 2000) (noting that an insurer "may, among other options, seek prompt resolution of the coverage dispute in a declaratory judgment action, a step we have encouraged insurers . . . to take"). Thus, under Texas law, Plaintiff's declaratory judgment claims are properly before this Court.

Under the federal Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "Abstention from the exercise of federal jurisdiction is the exception, not the rule," justified only in "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* at 813. The state court in Collin County cannot hear a claim against Founders until it determines the liability of Founders' former insureds. *See Owens*, 996 S.W.2d at 208. By contrast, this Court can expedite resolution of the coverage dispute by hearing Plaintiff's declaratory judgment claims against Kunkle. If Plaintiff waited for a liability determination to assert such claims in Collin County, those claims would likely be heard separately from Kunkle's claims against Founders' former insureds. *See In re Essex*, 450 S.W.3d at 526–27. Therefore, the circumstances of this case do not justify abstention from the exercise of this Court's federal jurisdiction.

### B. Venue

The Court must first determine whether a venue challenge is proper under 28 U.S.C. § 1391, and if so, whether it should transfer the case to the Eastern District of Texas under 28 U.S.C. § 1404(a).

#### 1. Proper venue under § 1391

Once a defendant has objected to venue, the burden shifts to the plaintiff to establish that venue is proper, but the Court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. *Emelike v. L-3 Commc'ns Corp.*, 2013 WL 1890289, at *1

7

(N.D. Tex. May 7, 2013) (Lynn, J.) (citing *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008)).

a. § 1391(b)(1)

Plaintiff alleges that all Defendants reside in Texas. (ECF No. 1 ¶¶ 4–7). Thus, if any Defendant resides in the Northern District of Texas, venue is proper in this district. *See* 28 U.S.C. § 1391(b)(1). Plaintiff alleges that "the Defendants reside and conduct business" in this district. (ECF No. 1 ¶ 11). Plaintiff sufficiently alleges the residency of the individual Defendants. *See Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Only Defendant Kunkle denied residency in this district. The other Defendants having failed to deny venue, venue as to them is established. Fed. R. Civ. P. 12(b)(3). Thus, venue is proper in this district under § 1391(b)(1).

The Court specifically finds that Defendant BB&G resides in the Northern District of Texas. (ECF No. 21 ¶ 4). For venue purposes, "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction . . . ." 28 U.S.C. § 1391(c)(2). BB&G was organized under Texas law, so Texas law determines its capacity to sue and be sued. *See Texas Clinical Labs, Inc. v. Leavitt*, 535 F.3d 397, 403 (5th Cir. 2008) (holding that "[t]he capacity of a corporation to bring suit is determined by the law of the state where it is organized") (citing Fed. R. Civ. P. 17(b)(2)); *see also* ECF No. 1 ¶ 4). Under the Texas Business Organizations Code ("TBOC"), "an entity that has forfeited its charter—i.e., 'a terminated entity'—continues in existence for three years from the effective date of its termination for several purposes, including [prosecuting or] defending an action brought [by or] against it." *In re Bros. Oil & Equip., Inc.*, No. 03-17-00349-CV, 2017

WL 3902617, at *4 (Tex. App.—Austin 2017) (no pet.); Tex. Bus. Orgs. Code §§ 11.356(a)(1), 11.001(4)(B), 5. BB&G thus retained the capacity to sue and be sued until February 21, 2017, three years after it forfeited its charter. However, Plaintiff did not file this suit until February 24, 2018. (*See* ECF No. 1 ¶ 4, Exs. B, C at 6–15). Texas law also provides, "If an action on an existing claim by or against a terminated filing entity" is pending at the end of that three-year period, the entity "continues to survive for purposes of [] the action until all judgments, orders, and decrees have been fully executed." Tex. Bus. Orgs. Code § 11.356(c)(1); *see also In re Bros. Oil & Equip., Inc.*, 2017 WL 3902617, at *4. "Claim" is defined as "a right to payment, damages, or property, whether liquidated or unliquidated, accrued or contingent, matured or unmatured," and "[e]xisting claim" as "a claim that existed before the entity's termination . . . ." Tex. Bus. Orgs. Code §§ 11.001(1), (3)(a).

Texas law "requires only that the actions giving rise to the liability occur before dissolution. If they do, the statute plainly provides for the survival of a party's right to assert claims arising out of or resulting from those actions," even after termination. *Anderson Petro-Equip., Inc. v. State*, 317 S.W.3d 812, 817 (Tex. App.—Austin 2010) (pet. denied) (holding under TBOC predecessor that the ceasing of production occurred prior to the forfeiture of a corporation's charter, thus giving the State of Texas an existing claim against the corporation for failure to pay penalties associated with stopping production[1]).

The question, then, is whether the events that ultimately prompted the claims in this suit occurred prior to termination. *Id; see also, e.g.*, *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d

---

[1] On January 1, 2010, TBOC replaced the Texas Business Corporations Act (TBCA). *Cohen Acquisition Corp. v. EEPB, P.C.*, No. 14-14-00330-CV, 2015 WL 2404869, at *2 (Tex. App.—Houston [14th Dist.] 2015) (pet. denied). TBOC "did not effect a material change" in the termination statutes. *See id.* at *3. In fact, TBOC broadened "existing claim" to apply to all terminated entities. Aimee Raimer, *What's in A Claim?: Utilizing the Bankruptcy Conduct and Pre-Petition Relationship Tests to Evaluate Existing Claims Against a Terminated Filing Entity*, 66 Baylor L. Rev. 760, 781 (2014); *see also* Tex. Bus. Orgs. Code § 11.001(3). TBCA "discusses existing claims only in regards to a terminated corporation." *Id.*; *see also* Tex. Bus. Corp. Act art. 7.12 (expired Jan. 1, 2010).

547, 549 (Tex. 1981) (finding under TBOC predecessor that elevator accident victim could not sue the elevator installation company because his "cause of action did not accrue until he was injured more than eleven years after the company dissolved"); *J&J Sports Prods., Inc. v. Los Taquitos Bar & Grill LLC*, No. 7:19-CV-160, 2019 WL 3892296, at *3 (S.D. Tex. Aug. 19, 2019); *see also* Aimee Raimer, *What's in A Claim?: Utilizing the Bankruptcy Conduct and Pre-Petition Relationship Tests to Evaluate Existing Claims Against a Terminated Filing Entity*, 66 Baylor L. Rev. 760, 762, 764 (2014) (noting that there is "no clear method to determine what constitutes an existing claim under [TBOC]," and drawing upon two common-law bankruptcy tests to clarify the issue). If the events that prompted the claims occurred prior to termination, the claims existed as "contingent liabilities . . . and as unmatured and unliquidated claims" against the company. *Anderson Petro-Equip., Inc.* at 818.

In *J&J Sports Prods., Inc. v. Los Taquitos Bar & Grill LLC*, a restaurant broadcast a championship fight in 2016. *J&J Sports Prods., Inc.*, 2019 WL 3892296, at *1. The restaurant closed in 2017. *Id.* In 2019, a production company sued the restaurant for broadcasting the fight without paying sublicense fees. *Id.* In holding that the restaurant continued to exist for the purpose of a suit on an existing claim, the court stated, "Clearly, [the production company's] claim existed before [the restaurant's] termination," because the claim "accrued" in 2016, before termination. *Id.* at *3.

Here, Plaintiff's insurance coverage dispute stems from Kunkle's 2011 motorcycle crash. (ECF No. 1 ¶ 16). BB&G did not forfeit its charter until 2014. (*Id.* ¶ 4, Ex. B). Therefore, just as in *J&J Sports Prods., Inc.*, Plaintiff's claim existed before BB&G's termination, and BB&G continues to exist for the purpose of this suit. *See J&J Sports Prods., Inc.*, 2019 WL 3892296, at

10

*3; *see also Anderson Petro-Equip., Inc.* at 817, 819–20. Thus, under TBOC § 11.356(c)(1), BB&G retained the capacity to sue and be sued when Plaintiff filed this case.

Because BB&G retained the capacity to sue and be sued, for venue purposes, BB&G resides in any judicial district in which it is subject to the Court's personal jurisdiction. *See* 28 U.S.C. § 1391(c)(2). The Court has the power to exercise personal jurisdiction over a defendant only if the following conditions are satisfied: (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *In re Chinese–Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 535 (5th Cir. 2014). Because "[t]he Texas long-arm statute extends to the limits of the Constitution," only the second prong of the test is at issue. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

There are two categories of personal jurisdiction, general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). "The paradigm all-purpose forums for general jurisdiction" over a limited liability company are its "place of incorporation and principal place of business." *See id.* at 119. Plaintiff alleges that BB&G was "formed under the laws of the State of Texas." (ECF No. 1 ¶ 10). Thus, this Court has personal jurisdiction over BB&G, and BB&G therefore resides in this district for venue purposes. *See* 28 U.S.C. § 1391(c)(2). Because BB&G resides in the Northern District of Texas, and all Defendants indisputably reside in Texas, venue exists in this district under 28 U.S.C. § 1391(b)(1).

b. § 1391(b)(2)

Although it is not necessary for the Court to reach the question of whether venue also exists under § 1391(b)(2), the Court finds that venue exists under that provision. Courts tend to liberally construe the "substantial part of the events" option for proper venue. "[V]enue does not

have to be the place where the most relevant events took place . . . ." *Emelike v. L–3 Commc'ns Corp.*, No. 3:12–CV–2470–M, 2013 WL 1890289, at *3 (N.D. Tex. May 7, 2013) (Lynn, J.). Rather, "communications to the district can constitute a substantial part of the events giving rise to a plaintiff's claims, if the claims derive directly from those communications." *Siragusa v. Arnold*, No. 3:12-CV-04497-M, 2013 WL 5462286, at *3 (N.D. Tex. Sept. 16, 2013) (Lynn, J.). This includes telephone communications and electronic transmissions. *Id.* at *7–8 (citing *Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. March 31, 2003)). Courts have attributed attorneys' communications on behalf of clients to the clients for venue purposes. *See, e.g., Rich v. Housman,* No. 3:13-1979, 2014 WL 888510, at *17 (M.D. Pa. Mar. 6, 2014) (attributing attorney communications to client on agency principles); *see also Siragusa*, 2013 WL 5462286, at *3 (holding that attorney negotiation in the court's district constituted a substantial part of the events giving rise to plaintiff's claims).

The attorneys for Plaintiff and Kunkle have offices in this district. Thus, venue is proper if Plaintiff alleges that communications with its attorneys in this district constitute a substantial part of the events giving rise to its claims. Plaintiff alleges that on October 1, 2013, it received a fax from one of Kunkle's attorneys with a copy of Kunkle's petition in the Collin County suit. (ECF No. 1 ¶ 19). Plaintiff alleges that on October 3, 2013, it had a telephone conversation with that attorney, asserting the lack of coverage under the Founders Policy and informing the attorney that Plaintiff had provided Kunkle's prior counsel with the relevant policy documents, including the notice of cancellation. (*Id.* ¶ 20). Plaintiff alleges that on August 21, 2017, Kinser's attorney sent Plaintiff a second notice of her claim under the Founders Policy for a defense and indemnity on Kunkle's claims against her in the Collin County suit. (*Id.* ¶ 26, Ex. C at 2–5). Plaintiff alleges that on September 7, 2017, it notified Kinser that the Founders Policy

was not in effect on September 30, 2011, the date Kunkle was allegedly injured in the motorcycle crash, and requested that Kinser divulge the information she relied upon in making the August 17, 2017, claim, but received no response. (*Id.* ¶ 27, Ex. F). Plaintiff's request for a declaratory judgment that it has and had no duty to defend or indemnify any Defendant on Kunkle's claims in the Collin County suit due to an alleged lack of coverage under the Founders Policy arose in substantial part from these communications. Thus, the communications to and from Plaintiff's attorneys in this district constitute a substantial part of the events giving rise to Plaintiff's claims, and venue is therefore proper in this district under § 1391(b)(2).

2. Venue transfer under § 1404(a)

Even when venue is proper, the Court may nevertheless, "for the convenience of the parties and witnesses" and in "the interest of justice," transfer the case to any district in which the case may have been brought under § 1391. *Siragusa*, 2013 WL 5462286, at *4 (quoting 28 U.S.C. § 1404(a)). "A plaintiff's choice of forum deserves a degree of deference when a defendant seeks to transfer venue." *Id.*; *see also Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966). "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Siragusa*, 2013 WL 5462286, at *4 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)). "The burden is thus on the party seeking transfer to clearly demonstrate that a different venue would be more appropriate." *Id.*

"In deciding whether to grant transfer, the Court must weigh the various private and public interests." *Id.* (citing *In re Volkswagen of Am., Inc.*, 545 F.3d at 315). "The existence of a valid forum selection clause will be a significant factor that figures centrally in the . . . calculus."

*Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations omitted).

    a. Proper venue under § 1391

First, the Court must determine whether this case could properly be brought in the proposed alternative venue under § 1391. Here, Kunkle's claims in the Collin County suit concern BB&G's alleged service of alcohol to Kunkle before his motorcycle accident. (ECF No. 1, Ex. C at 6–15). Because Plaintiff was BB&G's insurer, a "substantial part of the events or omissions" giving rise to Plaintiff's insurance coverage claims stemming from Kunkle's incident occurred in the Eastern District of Texas. 28 U.S.C. § 1391(b)(2). Thus, the proposed alternative venue of the Eastern District of Texas is proper. (*See* ECF No. 21 ¶ 3).

    b. Forum Selection Clause

The forum selection clause in the Founders Policy, to which Kunkle was not a party, does not support transfer to the Eastern District of Texas, since it states that "all actions arising directly or indirectly from this policy shall be litigated in courts located within Cook County, Illinois." (ECF No. 1, Ex. A at 6). Therefore, the forum selection clause does not support transfer.

    c. Private Interest Factors

Kunkle has not identified any private interest factors that support transfer to the Eastern District of Texas, other than making the conclusory statement that "venue is much more proper and convenient there for all Defendants" based solely on the service of all Defendants in the Eastern District of Texas. (*See* ECF No. 21 ¶¶ 5–6, Exs. B–G). However, Kunkle is the only one of the three remaining Defendants who has objected to venue. Plaintiff's preference for this

district renders the choice at best neutral. Thus, the private interest factors do not weigh in favor of transfer to the Eastern District of Texas.

        d. Public Interest Factors

This case has been pending in this Court for nearly two years. This Court is familiar with this case, and it contains separate and distinct claims from the Collin County suit that are properly before a federal court sitting in diversity jurisdiction. This public interest factor thus weighs against transfer to the Eastern District of Texas.

In sum, besides the fact that venue also exists in the Eastern District of Texas, all factors are either neutral or weigh against transfer to the Eastern District of Texas. "When the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. The Eastern District of Texas is not a clearly more convenient forum than the Northern District of Texas. Therefore, the Court declines to transfer this case to the Eastern District of Texas under § 1404(a).

For the foregoing reasons, Defendant Kunkle's Motion to Dismiss or Transfer (ECF No. 21) is **DENIED**.

    **SO ORDERED**.

October 23, 2019.

                                            BARBARA M. G. LYNN
                                            CHIEF JUDGE